**Revised February 10, 2000**

**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

_____

No. 98-11377

_____

State of Tennessee ex. rel. DOUGLAS SIZEMORE, Commissioner of Commerce and Insurance of the State of Tennessee on behalf of policyholders and other third-party claimants of Anchorage Fire and Casualty Insurance Company a/k/a Global Capitol Assurance Company, Ltd.

Plaintiff-Appellant,

VERSUS

SURETY BANK, formerly known as Texas Bank, N.A.

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas, Dallas Division
_____
January 25, 2000

Before DAVIS, JONES, and MAGILL[1], Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This case arises out of the insolvency of Anchorage Fire & Casualty Insurance Company ("Anchorage"), an Antiguan company engaged in the insurance business throughout California, Texas,

_____

[1]Circuit Judge of the Eighth Circuit, sitting by designation.

Tennessee, and Georgia.  Plaintiff Sizemore ("the Receiver") is the Commissioner of Commerce and Insurance for the State of Tennessee and is the appointed Conservator and Liquidator of all Anchorage assets.  He brought this cause of action against Surety Bank, a Texas Bank that maintained several bank accounts in Anchorage's name.  The Receiver alleged that Surety Bank violated the Liquidation and Conservation Orders of the Tennessee Chancery Court, primarily by failing to turn Anchorage assets over to the Receiver.  The district court granted summary judgment on Surety Bank's behalf, holding that the Bank was not bound by the orders because the Chancery Court lacked jurisdiction over Anchorage assets located outside of Tennessee.  For reasons that follow, we agree with the district court that the Tennessee court lacked jurisdiction and affirm.

I.

In January 1993, Anchorage was either insolvent or on the verge of becoming insolvent.  By March, the states of Texas and Tennessee had each initiated independent insolvency proceedings against Anchorage.  As the interplay of these proceedings forms the crux of this lawsuit, we will discuss each in some detail.

**Tennessee Proceedings**

In early March 1993, a federal district court in Tennessee entered a temporary restraining order enjoining several financial institutions, including Surety Bank, from transferring, disbursing, or in any way interfering with accounts held under the Anchorage

2

name.

One week later, the Tennessee Chancery Court placed Anchorage into receivership pursuant to the Tennessee Insurers Rehabilitation and Liquidation Act, Tenn. Code Ann. § 56-9-101 et seq. The court found that Anchorage was "in such condition that further transaction of business would be hazardous to its policyholders, creditors, and the public." Accordingly, it entered a Conservation Order enjoining "all persons, firms, and associations" from transferring, wasting, or dissipating Anchorage bank accounts or interfering with the Conservator and the Conservatorship. The court further directed the Tennessee Commissioner of Commerce and Insurance to take possession of Anchorage's assets and to administer them under court supervision. In May, the Chancery Court converted the temporary injunction into a permanent injunction and the conservation proceedings into liquidation proceedings. The court entered a liquidation order authorizing the Receiver to take possession of "all property assets, and estate . . . wheresoever located, whether within or without the state of Tennessee and belonging to Anchorage."

**Texas Proceedings**

In April 1993, Surety Bank filed a motion to intervene in a Texas lawsuit involving some Anchorage assets. Surety Bank then moved for interpleader, arguing that among the assets at issue in the lawsuit were funds that had been deposited in the same Surety Bank accounts as those involved in the Tennessee proceedings

3

against Anchorage. Surety Bank named Anchorage and the Receiver as defendants, paid approximately $600,000 into the registry of the court pending resolution of the conflicting claims, and asked the court to discharge the Bank from all liability with respect to the claims.

In response, the Receiver moved to stay or dismiss the interpleader suit, claiming that the Tennessee liquidation court had exclusive jurisdiction over Anchorage's property regardless of where it was located, and that the Texas court should give full faith and credit to the Tennessee liquidation order. The court denied the Receiver's motion and entered summary judgment, awarding the impleaded funds to United Shortline.

The Texas Court of Appeals affirmed the district court in part and reversed in part. <u>Bryant v. United Shortline Inc. Assurance Services N.A.</u>, 984 S.W.2d 292 (Tex. App. 1996)("<u>Bryant I</u>"). The court held that the Tennessee Chancery Court "exceeded its statutory jurisdiction when it ordered liquidation of assets outside Tennessee" and that the district court did not err in refusing to give the liquidation order full faith and credit. 984 S.W.2d at 298. The court concluded that the parties had yet to resolve ownership of the funds adequately and therefore remanded the case for further factual development.

In May 1998, the Texas Supreme Court affirmed the decision but used a different rationale than the court of appeals. <u>Bryant v. United Shortline Inc. Assurance Services N.A.</u>, 972 S.W.2d 26, 29 &

4

n.1 (Tex. 1998)("Bryant II"). The court declined to decide whether the Tennessee court had jurisdiction over Anchorage assets located in Texas. The court stated that "we neither approve nor disapprove of the court of appeals' finding that [the Tennessee statute] precludes the Tennessee chancery court from exercising jurisdiction over Anchorage assets located outside Tennessee." Id. Instead, the court held that the Tennessee court order did not affect the Texas impleader action. The court explained that because the Tennessee court order, by its express terms, applied only to funds belonging to Anchorage, it had no effect on the Texas action, which was designed to address the antecedent question of whether the funds at issue actually belonged to Anchorage, rather than to another party.

**The Present Action**

The Receiver filed the present action in May 1995, in the court below, seeking title to a number of accounts allegedly belonging to Anchorage, which were on deposit with Surety Bank. The Receiver alleged that the Tennessee Chancery Court vested him with title to the Texas deposits and that Surety Bank intentionally violated the orders of the Tennessee courts, committed fraudulent transfers, common law conversion, common law fraud, negligence, and bad faith. He alleges that Surety Bank withdrew assets from the Anchorage accounts and transferred them to third parties or to other accounts that the Bank maintained for their own purposes.

The district court entered summary judgment for Surety Bank,

5

holding that the Tennessee Chancery Court lacked jurisdiction to issue the Conservation and Liquidation Orders. The court explained that because the Receiver's claims arose solely from the rights obtained in the Tennessee court orders, enforcement of those rights depended upon whether the Tennessee orders were entitled to full faith and credit. Whether the Tennessee orders were entitled to full faith and credit, in turn, depended on whether the Tennessee court had jurisdiction to issue the orders.

In determining whether the Tennessee court had jurisdiction to issue the orders, the district court stated that it would interpret the Tennessee jurisdictional statute as a Texas state court would interpret it. The district court concluded that the Texas Court of Appeals' decision in Bryant I demonstrated that Texas courts would find that the Tennessee statute did not authorize Tennessee courts to exercise jurisdiction over Texas property. Accordingly, the district court refused to grant full faith and credit to the Tennessee Liquidation and Conservation Orders.

Sizemore appeals, arguing that: (1) the district court erred in concluding that the Tennessee Chancery Court lacked jurisdiction to enter the Liquidation and Conservation Orders; (2) the district court should have granted full faith and credit to the Tennessee Chancery Court's own determination that it possessed subject matter jurisdiction, and; (3) Surety Bank is estopped from challenging the Conservation and Liquidation Orders. We review each of these arguments de novo. Gardemal v. Westin Hotel Co., 186 F.3d 588, 592

6

(5th Cir. 1999).

                              II.

    A court need not grant full faith and credit to a judgment
rendered in another state unless that state had jurisdiction to
render the judgment. Underwriters Nat'l Assurance Co. v. N.C. Life
& Accident & Health Ins. Guar. Ass'n., 455 U.S. 691, 705 (1982);
Restatement (Second) of Judgments § 81 (1982). As the Supreme
Court explained in Underwriters Nat'l Assurance Co.: "before a
court is bound by the judgment rendered in another State, it may
inquire into the jurisdictional basis of the foreign court's
decree. If that court did not have jurisdiction over the subject
matter or the relevant parties, full faith and credit need not be
given." Id. at 705. Thus, the critical question presented to us
is whether the Tennessee Chancery Court possessed jurisdiction to
issue the Liquidation and Conservation Orders with regard to assets
located outside the State of Tennessee. If the Tennessee court had
jurisdiction to issue the orders, then the district court must give
full faith and credit to the orders. If not, then the orders
cannot serve as the basis for a cause of action in Texas courts.

                              A.

    We must first consider whether to apply Texas or Tennessee law
to determine whether the Tennessee court acted within the scope of
its jurisdiction.

    The district court applied Texas law, reasoning that because

                               7

jurisdiction was a question of substantive state law, the Erie doctrine compelled it to apply the substantive law of the forum state -- Texas.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

The Receiver counters that this is not an Erie question, but rather a full faith and credit question: what effect would a Tennessee court give to a state court judgment that was rendered in excess of its jurisdiction?  Because full faith and credit questions are matters of federal constitutional and statutory law, Durfee v. Duke, 375 U.S. 106 (1963); 28 U.S.C. § 1738, the Receiver concludes that the district court need not apply the law of the forum state.[2]  We agree.

Although district courts need not give foreign state court judgments full faith and credit unless the state court had jurisdiction to render the judgment, this inquiry flows from the Full Faith and Credit Clause itself.  As the Supreme Court has explained:

> This limitation flows directly from the principles underlying the Full Faith and Credit Clause.  It is axiomatic that a judgment must be supported by a proper showing of jurisdiction over the subject matter and over the relevant parties.  One State's refusal to enforce a judgment rendered in another State when the judgment is void for lack of jurisdiction merely gives to that judgment the same 'credit, validity, and effect' that it would

---

[2] See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

8

receive in a court of the rendering state.

Underwriters, 455 U.S. at 705 n.10; Cf. A.L.T. Corp. v. Small Business Admin., 801 F.2d 1451, 1456 (5th Cir. 1986)("As part of full faith and credit analysis we look to [rendering] state law to determine how much credit the state judgement deserves."). Because this inquiry is a question of federal constitutional law, the district court need not apply the law of the forum state. See Erie, 304 U.S. at 708.

Indeed, this Court has previously applied the law of the rendering state, rather than that of the forum state, to determine whether to grant full faith and credit to a foreign state judgment. Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 154 & n.1 (5th Cir. 1974)(applying Colorado law to determine whether Colorado state court acted without jurisdiction). Other circuits have also followed this approach. For example, in Clyde v. Hodge, 413 F.2d 48 (3d Cir. 1969), the Third Circuit held that a Pennsylvania district court must give an Ohio state court judgment "the same force and effect in this action as it would have been accorded by Ohio courts." Id. at 50. The court explained that "Ohio law controls the effect to be given the Ohio judgment notwithstanding the fact that the district court was sitting in diversity in Pennsylvania." Id. at 50 n.2. See also Restatement (Second) of Conflicts of Laws § 105 cmt. b ("When recognition or enforcement of a judgment rendered in one state is resisted in a

9

second state on the ground of the alleged incompetence of the court to render the judgment, the statutes and decisions of the courts in the state in which the judgment was rendered are controlling.").

Accordingly, we look to Tennessee law to determine what effect to give to the Tennessee Chancery Court's Liquidation and Conservation Orders.

B.

Tennessee law limits the circumstances under which a party may collaterally challenge a court's subject matter jurisdiction. Although Tennessee law permits parties to attack collaterally an order on the ground that the court exceeded the powers conferred upon it by law, <u>Guy v. American Federation of Govt. Employees Local 2501</u>, 1987 WL 5168, *2 (Tenn. Ct. App. Jan. 9, 1987), that party must demonstrate that the court did not simply err in exercising a power that it possessed, but rather, that the court usurped power where none existed, <u>Brown v. Brown</u>, 281 S.W.2d 492, 499 (Tenn. 1955). As the Tennessee Supreme Court explained:

> While it is well settled that a judgment cannot be questioned collaterally for an error committed in the exercise of jurisdiction, the rule is equally well established that a judgment may be attacked in a collateral proceeding for error in assuming jurisdiction. . . . One form of usurpation of power on the part of a court in rendering a judgment is where it attempts to disregard limitations prescribed by law restricting its jurisdiction. Where a court is authorized by statute to entertain jurisdiction in a particular case only, and it undertakes to exercise the power and jurisdiction conferred in a case to which the statute has no application, in so doing it will not acquire

10

> jurisdiction and its judgment will be a nullity and
> subject to collateral attack.

Chickamauga Trust Co. v. Lonas, 201 S.W. 777, 778-79 (Tenn. 1918).

With this distinction in mind, the Receiver cites a number of Tennessee cases suggesting that although Surety Bank may attack the Chancery Court's subject matter jurisdiction to appoint a receiver, it may not collaterally attack the scope of the receiver's authority. See, e.g., Slaughter v. Louisville & Nashville R.R. Co., 143 S.W. 603, 605 (Tenn. 1911)(holding that "the scope of [the receiver's] authority prescribed in the order of his appointment, cannot be questioned in another tribunal, unless the order or decree was void"); Robertson v. Davis, 90 S.W.2d 746, 752 (Tenn. 1936)("Where the court appointing a receiver has jurisdiction of the subject-matter and of the parties, a collateral attack upon the appointment of the receiver or a collateral attack questioning the power conferred upon the receiver will not be entertained. Such appears to be the universal rule.").

While the rule cited by the Receiver appears to have been controlling authority at one time, more recent Tennessee case law leads us to conclude that present-day Tennessee courts would allow a collateral attack on the scope of the Receiver's authority. For example, in Brown v. Brown, 281 S.W.2d at 614, the Tennessee Supreme Court entertained a collateral attack upon the validity of a divorce decree despite the fact that the lower court had subject matter and personal jurisdiction. The court explained that:

11

> The Circuit Court in this case had the general jurisdiction of the subject matter of divorce and alimony; but it could make no valid adjudication with reference thereto which was not within the powers granted to it by law. A distinction must be made between the mere erroneous exercise of a power granted, and the usurpation of power where none exists. . . . The Circuit Court in this case exceeded the powers conferred upon it by law. Its judgment awarding the wife alimony after granting the husband a divorce is not only beyond the powers conferred upon it by statute, but is also directly contrary to the mandate of the applicable statute.

Id. at 613-14 (internal citations omitted).[3] Similarly, our analysis of Tennessee's insurer liquidation statutes leads us to conclude that the Tennessee Chancery Court exercised jurisdiction in a manner "not only beyond the powers conferred upon it by statute" but also "directly contrary to the mandate of the applicable statute."

We now turn to an analysis of Tennessee's insurer liquidation statutes as they apply to the facts of this case.

A Tennessee court has no jurisdiction to grant a receiver any power or authority except in accordance with Chapter 9, Title 56 of the Tennessee Code. Tenn. Code Ann. § 56-9-104(b). Although Section 402 of Title 56 permits the Chancery Court to "issue an order to liquidate in whatever terms it deems appropriate" if "it

---

[3] See also Maddron v. Maddron, 1991 WL 135467, *4 (Tenn. Ct. App. July 25, 1991)(holding that a judgment "is subject to collateral attack where . . . the judgment is void for want of jurisdiction with respect to the power of the court to render the particular judgment or decree, as where the court . . . exceeds the powers conferred on it by constitutional or statutory provisions").

12

appears to the court that the best interests of creditors, policyholders and the public so require," Section 402 also imposes clear territorial limits on the jurisdiction of the chancery court. See Tenn. Code Ann. § 56-9-402(b),(c)(1998). Unlike Section 307, the domestic insurer liquidation provision, which permits the chancery court to appoint a receiver to liquidate assets "wherever located," Section 402 provides only that "the commissioner may apply to the chancery court . . . for an order directing the commissioner to liquidate the assets found in this state of a foreign insurer or alien insurer not domiciled in this state... ." Tenn. Code Ann. § 56-9-402(a) (1998)(emphasis added).[4]

Anchorage was an alien non-domiciliary insurer and as such the Chancery Court lacked jurisdiction to order the liquidation of any Anchorage assets located outside of Tennessee. In ordering the liquidation of Anchorage Assets "wheresoever located, whether within or without the state of Tennessee," Order of Liquidation and Permanent Injunction at ¶d, the Chancery Court exercised

---

[4] In his reply brief, the Receiver points to a June 14, 1999 amendment to Section 401 of Title 56 that permits the Commissioner to issue conservation orders "to conserve the property [of a non-domiciliary insurer] found in this state or any other state." Tenn. Senate Bill 1080 § 4. The Chancery Court, however, rendered the Liquidation Order pursuant to Section 402, which governs liquidations and which was not amended in this manner. See Tenn. Code. Ann. § 56-9-402 (1999). Moreover, although the amendment purports to have retroactive effect, the retroactivity provision states that the amendment applies only "for the purpose of conducting the proceeding henceforth." Tenn. Senate Bill 1080 § 5. Because our review takes place after the completion of the Tennessee proceedings, we conclude that the amendment does not have retroactive effect in this case.

13

jurisdiction in a manner "directly contrary to the mandate of the applicable statute," Brown v. Brown. 281 S.W.2d at 499. Accordingly, the district court did not err in permitting Surety Bank to attack collaterally the judgment of the Chancery Court. Moreover, we hold that under Tennessee law, the Chancery Court lacked jurisdiction to enter the Liquidation and Conservation Orders against Anchorage assets located outside of Tennessee.[5]

C.

The Receiver also argues that the district court should have given full faith and credit to the Chancery Court's own determination that it possessed subject matter jurisdiction over Anchorage assets located outside of Tennessee. Although Surety Bank was not a party to the Chancery proceedings and none of the parties to the proceedings litigated the question of the Chancery Court's jurisdiction, the Receiver nevertheless argues that principles of full faith and credit preclude the Bank from challenging in a Texas court the jurisdiction of a Tennessee court.

A state court judgment is "entitled to full faith and credit – even as to questions of jurisdiction – when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the

_____

[5] Accord Bryant v. United Shortline, 984 S.W.2d at 297-98 (holding that Tennessee court exceeded its statutory jurisdiction when it ordered liquidation of assets outside Tennessee).

14

judgment." Durfee v. Duke, 375 U.S. 106,111 (1963); Underwriters Nat'l Assurance Co., 455 U.S. at 707. Similarly, where a party has had an opportunity to litigate the question of jurisdiction but fails to do so, the second court must give full faith and credit to the first court's determination of jurisdiction. Sherrer v. Sherrer, 334 U.S. 343, 352 (1948); Felhaber v. Felhaber, 681 F.2d 1015, 1031 & n.27 (5th Cir. 1986).

In each of these cases, however, either the party challenging the jurisdiction of the state court was actually involved in the original state court litigation or the previous parties had fully litigated the question of jurisdiction. See Sherrer, 334 U.S. at 352; Durfee, 375 U.S. at 107-08; Underwriters Nat'l Assurance Co., 455 U.S. at 707-08; Fehlhaber, 681 F.2d 1015 at 1018-19. Surety Bank, in contrast, was a party to neither of the Tennessee proceedings. Moreover, the parties to the Tennessee proceedings never litigated the issue of jurisdiction. To bind Surety Bank to such a judgment would contravene both the general rule that a person cannot be bound by a judgment in litigation to which he is not made a party or in which he is not served with process, Zenith Radio Corp. v. Hazeltine Research Inc., 395 U.S. 100,110 (1969), and the rule that a court cannot command a person to become an intervenor in a suit in which the person is neither a party nor is served, Baker v. General Motors Corp., 522 U.S. 222 (1998). The constitutional command of full faith and credit does not compel Texas courts to defer to a Tennessee court's exercise of

15

jurisdiction where the issue was neither fully and fairly litigated nor involved the same parties as the Texas litigation.

## D.

Finally, the Receiver argues that Surety Bank is estopped from attacking the Conservation and Liquidation Orders because: (1) the Bank failed to challenge the orders in Texas domestication proceedings and (2) the Bank's parent corporation, Surety Capital, represented to the S.E.C. that the Receiver had authority to liquidate assets outside of Tennessee.

The domestication orders, which were filed under the Texas Uniform Enforcement of Foreign Judgments Act ("UEFJA"), cannot serve as the basis for estoppel. As a non-party, Surety Bank could not have challenged the domestication order under the UEFJA. While the UEFJA allows a judgment debtor to seek a stay of enforcement from the foreign judgment, it does not provide similar procedures for non-parties. See Tex. Civ. Prac. & Rem. Code § 35.006. Similarly, while Texas courts have found that debtors have an implied right to bring proceedings challenging the foreign judgment, courts have not suggested that third parties enjoy the same right. See Schwartz v. FMI Properties Corp., 714 S.W.2d 97 (Tex. App. 1986). Because Texas law afforded Surety no opportunity to challenge the domestication of the Tennessee orders, Surety is not estopped on the basis of these proceedings.

Surety Capital Corporation's February 22, 1996, S-1 S.E.C.

16

Registration Statement also cannot serve as a basis for estoppel. Although the Registration Statement declared that Surety was selling 174,939 shares of Surety Capital Corporation common stock "pursuant to the Liquidation Order, which authorizes liquidation of all assets of Anchorage Fire & Casualty Insurance Company," the Receiver, not the Bank, made the representations in the Registration Statement concerning the Liquidation Order.

Judicial estoppel prevents a party from taking a position that is "contrary to a position previously taken in the same or earlier proceeding." Ergo Science, Inc. v. Martin, 73 F.3d 595, 598 (5th Cir. 1996). Because the S.E.C. representations were neither made by Surety Bank nor made in judicial proceedings, they cannot serve as the basis for estopping the Bank.

## III.

The district court did not err in refusing to give full faith and credit to the Tennessee judgment. The judgment of the district court is therefore AFFIRMED.

17